548 P.2d 1193

Marcelle Geer BREAN, Appellant,

v.

NORTH CAMPBELL PROFESSIONAL BUILDING, an Arizona Corporation, et al., Appellees.

No. 2 CA–CIV 1962.

Court of Appeals of Arizona, Division 2.

April 26, 1976.

Rehearing Denied May 25, 1976.
Review Denied June 15, 1976.

Holesapple, Conner, Jones & Johnson, by A. O. Johnson and Edmund D. Kahn, Tucson, for appellant.

Merchant, Lohse & Bloom, by Ashby I. Lohse, Tucson, for appellees North Campbell Professional Building, Berlin and Dennis.

Price, Tinney, Lindberg & Gianas, by John Price, Tucson, for appellee Coldwell Banker & Co.

Lawrence P. D'Antonio, Tucson, for appellee Transamerica Title Ins. Co.

## OPINION

HATHAWAY, Judge.

Appellees North Campbell Professional Building, Sanford S. Berlin and Bette Dianna Berlin, husband and wife, Ronald E. Dennis and Virginia R. Dennis, husband and wife, hereinafter referred to as plaintiffs, commenced an action against Marcella Geer Brean, hereinafter referred to as appellant, and others, for damages and reformation of a deed based upon alleged discrepancies in the amount of property conveyed to them by appellant. Appellant answered denying any breach of agreement or damages and alleging estoppel. She also filed a counterclaim against the plaintiffs, a crossclaim against defendant Transamerica Title Insurance Company, and a third-party complaint against Coldwell Banker and Company. The issues were joined and at a pretrial conference, it was agreed and ordered that the issues would be severed, the court sitting without a jury, to decide what property was intended to be conveyed, with a later trial if necessary on other issues. The court entered its order finding (1) that the property intended to be conveyed was as described in the order and that Brean was liable to all plaintiffs; (2) that defendant Transamerica Title was liable to the individual plaintiffs and (3) against Brean on her counterclaim, crossclaim and third-party claim.

The facts are as follows. The individual plaintiffs were and are osteopathic physicians practicing in Pima County, Arizona.

The corporate plaintiff is a corporation formed by the individual plaintiffs to take title to the property involved in this litigation. Brean was the owner of the real estate situated on the west side of Campbell Avenue north of Allen Road and being across Campbell Avenue from Tucson General Hospital, the hospital in which the individual plaintiffs practiced. Plaintiff Ronald E. Dennis, in October 1968, had indicated that he was interested in vacant property for office space. One McGhee, an individual not involved in this action, heard of this desire and requested James A. Green, a real estate agent employed by Coldwell Banker and Company, to present certain property owned by McGhee to Dennis for his consideration. Green contacted Dr. Dennis who advised him that he was not interested in the property and did not consider the location favorable, but requested Green to try and find a location on North Campbell Avenue. After presenting one or two other properties, Green, who had observed the Brean property, contacted Mrs. Brean in regard to the possibility of selling the vacant portion of her property to the doctors. Green had never met Mrs. Brean. Mrs. Brean showed interest in selling whereupon a price was discussed and Green proceeded to prepare a deposit receipt and sales agreement in the usual form. The agreement described the property being conveyed as the "south 175 feet" of the parcel involved.

It is this figure of 175 feet which caused this litigation. Green measured the vacant property south of Brean's improvements, from the Allen Road curb on the south to a short adobe wall on the north, and, allowing for a 6-foot City of Tucson right-of-way of which he was apprised by a check with the City Engineer's Office, concluded that Mrs. Brean had 175 feet of vacant property available for sale. However, he did not find any of the survey points to enable him to know where the south line of the Brean property actually was, nor did he allow for a 20-foot strip of land along the south border which was

owned by the city. The testimony is clear that no mention was made to Brean of the possibility that she might be selling a portion of her improvements. The testimony is also clear that the doctors had no intention of buying any of her improvements and were interested only in the vacant portion.

The 175-foot figure was carried over into all subsequent descriptions and it was not determined just how much property was available until after closing when the doctors applied for a city building permit. At that time it was definitely established that the building, planned for a 175-foot parcel, could not be constructed. The doctors claimed that they had incurred expenses in the preparation of plans, arranging for construction contracts, financing, etc., based on the availability of 175 feet, and, of course, claimed their payment was excessive for what they received. After considerable correspondence and discussions, the doctors revised their building plans and constructed their building on the 155 feet of vacant property actually available to them. Prior to construction, the individual plaintiffs assigned their interest to the corporate plaintiff.

Transamerica Title's involvement in the case arose from the fact that it was requested to insure the title and to prepare a legal description. It prepared one description which was determined to be inaccurate. It then prepared a corrected description and obtained the corrected deed after the original deed had been executed. However, Transamerica, by an error of its own, actually insured the 155 foot parcel of vacant land which Brean owned. Counsel for Transamerica claimed that the plaintiffs were not harmed by its error since the parcel they actually bought was insured correctly, albeit by coincidence. Transamerica states that if indeed the parties intended a sale of 175 feet, then their legal description doesn't convey that amount since 20 feet described by it does not belong to Brean.

Appellant raises six points in this appeal. The first point is whether the court erred in denying her motion for judgment presented at the close of plaintiffs' case and again at the close of the evidence. The second is whether the court erred in finding that the property intended to be conveyed was the following:

"The South 205 feet of the North 1308.45 feet of the East 402 feet of the Northeast quarter of the Northeast quarter, Township 13 South, Range 14 East Gila and Salt River Base and Meridian, Pima County, Arizona.

EXCEPTING THEREFROM the South 30 feet thereof, also

EXCEPTING THEREFROM the East 40 feet thereof, also

EXCEPTING THEREFROM a triangular Parcel bounded on the North by a curve concave Northeasterly with a radius of 25 feet and Tangent to Lines, 40 feet West of the East line of said Northeast quarter of the Northeast quarter of the Northeast quarter. Reserving unto the grantor, her successors and assigns, an easement for ingress and egress over the West 16 feet of the above described property."

The third is whether the court erred in finding her liable to the plaintiffs in view of the conclusive evidence that plaintiffs received exactly what was intended to be conveyed in view of the evidence supporting their claim of estoppel. The fourth question is whether the court erred in granting judgment to the plaintiffs and against appellant on her counterclaim in view of the undisputed evidence that a mutual mistake of fact in regard to the property being conveyed by the deed existed. Fifth, whether the court erred in entering judgment against Brean on her third-party complaint in view of the evidence that the error originated with and was compounded by the third-party defendant. The sixth issue is whether the court erred in granting judgment to Transamerica on Brean's

cross-claim in view of the adjudicated liability of Transamerica to the plaintiffs.

We think the errors which occurred in this set of circumstances may be resolved by concentrating on what the intention of the parties was and what they believed the basis of the bargain to be. It is undisputed by both the buyers and seller that what was intended to be conveyed was a *vacant* piece of property. The evidence shows that appellant at no time intended to sell anything more or less than the vacant piece of her property which existed between Allen Road and the short adobe wall. Dr. Dennis, who initiated the negotiations and took the lead throughout the transaction, stated that he intended to buy 175 feet, believing the representation of the agreement that 175 feet existed between the curb and the adobe wall. Dr. Berlin testified on deposition that he drove by the property every day on the way to the hospital, that he made several visits to it and that he wanted to buy only the vacant space. He testified at trial that he had no intention of buying any of appellant's improvements.

■ We agree that the terms of a written contract cannot be varied by parol evidence and that prior negotiations are merged into the written contract. However, it is fundamental that when prior negotiations are sought to be introduced to show that the writing does not in fact reflect the intention of the parties, such evidence is admissible. As we said in *Sonnenberg v. Ashby,* 17 Ariz.App. 60, 495 P. 2d 500 (1972), the parol evidence rule does not apply to a situation where there was a prior agreement and the instrument does not express that agreement. See also: *Chantler v. Wood,* 6 Ariz.App. 134, 430 P. 2d 713 (1967), supplemented 6 Ariz.App. 325, 432 P.2d 469 (1967); 3 Corbin on Contracts, § 580 (1960).

Clearly, what the parties intended to buy and sell was a vacant piece of property which the doctors were told consisted of 175 feet from the adobe wall in question to Allen Road. The trial court found that what the doctors were entitled to receive was the parcel of land which they believed contained 175 feet and there is evidence to support this conclusion. Green testified that Brean mildly objected to the figure when she found out 175 feet would cut a few feet off her driveway but that she eventually acquiesced. The doctors always believed they were getting 175 feet. When the legal description of the land was placed in the deed, however, only 155 feet of vacant land was conveyed since the city owned 20 feet on the Allen Road side. When they discovered this, upon filing for a building permit, the doctors had the option of suing for rescission of the contract for a material breach or proceeding with the contract and suing for damages. They elected to sue for damages. 17 Am.Jur.2d Contracts § 446 (1964). Appellant's claim of estoppel is therefore without merit.

■ Again taking the evidence in the light most favorable to upholding the judgment, Brean signed a contract to sell 175 feet, she aided the rezoning of 175 feet, at all times representing the extent of her property to be from the wall to the curb. It is apparent, then, since the contract called for a conveyance of a vacant piece of land which was 175 feet in depth, and the doctors received a vacant piece of land only 155 feet deep, the trial court was correct in finding that Brean breached the contract and that portion of the judgment is therefore affirmed.

■ The next consideration is the involvement of Transamerica which arises from the fact it was requested to provide a legal description to issue a title policy to the plaintiffs upon the completion of the purchase of the property and to act as escrow agent. As such Transamerica owed a duty as a trustee to both buyers and sellers to perform in strict compliance with the terms of the escrow agreement, to abide by a relationship of trust and confidence with the parties to the escrow and to conduct the transaction with scrupulous honesty, skill and diligence. *Tucson Title Insurance Company v. D'Ascoli,* 94 Ariz.

230, 383 P.2d 119 (1963) ; *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412 (1965). The trial court found Transamerica liable in tort to the plaintiffs since but for the negligence of Transamerica in preparing the legal description the doctors would have been aware that the land they had contracted to buy was not available and no damages would have been sustained by them. In any case, Transamerica has chosen not to appeal from that portion of the judgment.

However, we must reverse that portion of the judgment which found no liability on the part of Transamerica to Brean on her crossclaim. Transamerica was entrusted with the duty of preparing a correct description and the evidence is clear that it failed to do so, constituting a breach of a duty which it owed to Brean as well as to the doctors. The trial court correctly ruled that Transamerica's breach of duty to the doctors rendered it liable to the doctors. By the same reasoning, it is also liable to appellant. As title insurer and escrow agent, Transamerica owed no lesser duty to the seller than to the buyers, and, therefore, appellant was entitled to recover on her crossclaim against Transamerica. *Kresse v. Ryerson*, 64 Ariz. 291, 169 P.2d 850 (1946).

As to appellant's third-party claim against Coldwell Banker on the basis that Green created the situation with a wrong measurement, the trial court was correct in finding no duty owed to her by Coldwell Banker. Green was not appellant's agent, but rather the plaintiffs' agent since he first approached them with the notion of finding a desirable piece of property for them and then sought out appellant's land. The fact that the listing agreement contained Mrs. Brean's promise to pay the commission upon the sale of the property did not make Green her agent. The language of *Mead v. Hummel,* 58 Ariz. 462, 121 P.2d 423 (1942), is helpful:

"There is not a scintilla of evidence that plaintiff himself made any such representations, for he never dealt with either of defendants directly, either orally or in writing. There is no evidence that Perkins and/or Kelly were the agents of plaintiff for the purpose of selling the property. On the contrary, it appears that plaintiff never employed them but that they contacted defendants, and after showing them several pieces of property and finding that they preferred, if possible, to secure part of plaintiff's land, they then, for the first time, approached plaintiff, telling him that they had buyers for part of the property if terms could be agreed upon. Under such circumstances there can be no doubt that Perkins and Kelly were the agents of defendants rather than plaintiff in making the sale. Nor does the fact that after he was approached plaintiff said he would pay them a commission if the deal was consummated alter that fact." 58 Ariz. at 467–8, 121 P.2d at 425.

Since Coldwell Banker was not Brean's agent, it owed her no duty to ascertain the correct legal description. Again taking the evidence in the light most favorable to sustaining the judgment, Coldwell Banker was told by Brean that the only land she had deeded to the city was to widen Campbell Avenue on the east and that she had deeded nothing to the city on Allen Road to the south. This statement misled Green who then measured thinking Brean owned from the curb to the adobe wall. He found out through his own contact with the city that the city owned six feet north of the curb line but was never informed about any additional footage owned by the city. He explained to Brean that he measured from the curb to the wall, got 181 feet and subtracted six feet for the right-of-way. The fact that Transamerica incorrectly described the parcel being sold by placing the entire parcel 20 feet farther south than intended cannot be attributed to Coldwell Banker or Green. Responsibility for any error would have to rest with Brean for erroneously informing Coldwell Banker's agent about the extent of her ownership right or with Transamerica which inaccu-

rately described the property. We therefore affirm the judgment in favor of Coldwell Banker on the third-party claim.

The judgment in favor of the plaintiffs on their claim and appellant's counterclaim is affirmed. The judgment in favor of Coldwell Banker on appellant's third-party complaint is affirmed. The judgment in favor of Transamerica on appellant's cross-claim is reversed.

HOWARD, C. J., and KRUCKER, J., concur.